TWEEDIE TRADING CO. v. KATES et al.

(District Court, S. D. New York.   October 6, 1908.)

SHIPPING (§§ 50, 177*)—DEMURRAGE—LIABILITY OF CHARTERER.

    Demurrage at Puerto Cabello, Venezuela, under agreement, with claim
for watching hawser, allowed to libellant, less an amount paid by re-
spondents for labor in discharging.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 576–584; Dec.
Dig. §§ 50, 177.*

    Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v.
Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

(Syllabus by the Judge.)

Ralph J. M. Bullowa, for libellant.
Adam K. Stricker, for respondent Kates.

ADAMS, District Judge.  This action was brought by the Tweedie
Trading Company against the firm of Kates & Bok to recover for
4 days' detention of the steamship Albis at Puerto Cabello, Venezuela,
in July, 1906, claimed to amount to $556.13, and for $2.50 for watch-
ing the respondents' hawser in New York and for $96.60 for the
extra cost of loading timber at Sabine Pass, Texas, instead of lumber,
which was the merchandise agreed upon, for transportation and de-
livery at the said Puerto Cabello.  The answer of the respondent
Kates admitted the detention but alleged that the agreement was enter-
ed into upon representations of the libellant that the lumber could be
unloaded in 3 days, which was to the libellant's knowledge false and
untrue and upon which, in the absence of knowledge on their part, the
respondents relied.  It was further alleged that an agreement in
writing was made between the parties wherein it was provided that
stevedoring at Puerto Cabello should be borne by the parties in equal
proportions, and that when the steamer reached the port of discharge,
stevedores were employed whose compensation amounted to $714,
which the respondents duly paid and that one-half thereof was due to
the respondents, payment of which has been demanded and refused.
The respondents denied the allegations of the libellant with respect to
the disbursements of $2.50 and $90.60.

    It appears that the parties had some transactions prior to the entry
of the agreement in question, which were compromised and settled
thereby.  This agreement provided:

                                   "New York, July 17, 1906.

It is mutually agreed between the Tweedie Trading Co. and Messrs. Kates
& Bok as follows:

1st—To waive demurrages charges on barges against demurrage charges on
S/S 'Albis' and to pay the sum of $5000.00 in full and final settlement of
freight on the S/S 'Albis' to the Tweedie Trading Co. against their payment
to Kates & Bok of $2000.00, as liquidated damages in settlement of return of
towage money for non-delivery of the dredge towed by the 'Myrtledene.'

---

2nd—All that is left of the 2 hawsers shall be turned over to Kates & Bok in accordance with agreement.

3rd—If the Tweedie Trading Co. has to pay for the stevedoring at Puerto Cabello then Kates & Bok shall pay half of the charges of said stevedoring.

For the discharging of the lumber in Puerto Cabello the Tweedie Trading Co. agrees to allow 4 running days whether the stevedoring is done by the Government of Venezuela or by themselves. Should any demurrage be incurred it should be settled at the rate of 8d. per net registered ton of the S/S 'Albis' and per day."

The principal dispute is with reference to responsibility for the time consumed in discharging at Puerto Cabello. There is no question that 4 days in excess of the agreed time were so consumed. The respondents' defence to this is a claim for fraud upon the part of the libellant in representing that the lumber could be discharged in 3 days. The lumber was designed for the construction of a dry dock by the government of Venezuela and when the vessel reached the port of discharge, instead of employing regular stevedores, the Venezuelan commandant in charge hired some mechanics from this country, who had gone there to build the dock, and also used some prison labor supplied by the government. I have no doubt the discharge was made as fast as practicable under the circumstances and that fact would seem to indicate that there was some mistake of judgment in stating 3 days as the time which would be consumed, but I do not think there is any basis for the claim of fraud. The president of the libellant estimated 3 days as the time that would be necessary but upon an objection of the respondents that it was insufficient, increased it to 4 days, which was incorporated in the agreement as above.

The 3d provision that if the libellant "has to pay for the stevedoring at Puerto Cabello then Kates & Bok shall pay half of the charges of said stevedoring." would indicate that the libellant was to do the discharging, as far as the vessel's tackles reached, as would be usual, but is somewhat in conflict with the succeeding provision: "For the discharging * * * the Tweedie Trading Company agrees to allow 4 running days whether the stevedoring is done by the Government * * * or by themselves," which would seem to show that Kates & Bok were to be responsible for the time occupied in that work. The meaning of the agreement is not at all clear but from the behavior of the parties it would appear that after reaching the port, the respondents were to attend to the discharging. In seeking to avoid responsibility through a claim of fraud they virtually acknowledged that the burden was upon them. If the Tweedie Company was to be responsible for the time used in discharging, there would have been no necessity for the provision for demurrage. I therefore conclude that the respondents are liable for the delay of 4 days. The net registered tonnage of the Albis was 860, which at 8 pence per ton would amount to $139.03 per day or $556.12 for 4 days.

It appears that the respondents paid the stevedoring expenses at Puerto Cabello, amounting to $612.72. The master of the vessel refused to have anything to do with disbursements of this character and they were therefore paid by the respondents' agents. These payments were for the labor of the mechanics who were employed in discharging.

The agreement provided that if the libellant paid for the stevedoring, the respondents should pay one-half thereof. The respondents actually paid for the work and only one-half thereof should be borne by them; this would leave the libellant responsible for the other half of the stevedoring, amounting to $306.36.

The libellant further claims $2.50 paid a watchman for guarding the respondents' hawser on a New York wharf. The libellant obtained possession of the hawser and pending arrangement with the repondents retained it a day, for which time the watchman was paid. This seems to be a proper charge against the respondents.

The libellant claims for the extra cost of loading timber, instead of lumber. It is urged by it that by reason of the large size of the pieces, an additional expense was incurred. It is not clear enough for the purposes of establishing this claim that the timber was not intended to be covered under the general description of "lumber." If any distinction was intended, it should have been expressed in the contract. The claim is disallowed.

The result of the contentions is that the libellant is entitled to recover the demurrage, $556.12 plus the watching of hawser $2.50, making $558.62, less one-half of the respondents' disbursements for labor, $306.36.

Decree for libellant for $252.26, with interest.